UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT LINDSAY,
      Plaintiff,

      v.                                          CIVIL ACTION NO.
                                                  12-11714-PBS
WELLS FARGO BANK, N.A., as
Trustee for Carrington
Mortgage Loan Trust
Series 2006-NC5 Asset-
Backed Pass-Through
Certificates,
      Defendant.


**REPORT AND RECOMMENDATION RE:
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED VERIFIED
COMPLAINT (DOCKET ENTRY # 7)**

**June 14, 2013**

**BOWLER, U.S.M.J.**

      Pending before this court is a motion to dismiss filed by

defendant Wells Fargo Bank, N.A., as Trustee for Carrington

Mortgage Loan Trust Series 2006-NC5 Asset-Backed Pass-Through

Certificates ("defendant").  (Docket Entry # 7).

PROCEDURAL BACKGROUND

      On June 13, 2012, plaintiff Robert Lindsay ("plaintiff")

filed an amended verified complaint seeking injunctive relief to

prevent the foreclosure and sale of his residence at 15 Dawson

Street in Boston, Massachusetts ("the property").  (Docket Entry

# 12-3).  The amended complaint sets out the following counts:

(1) injunctive relief to prevent the foreclosure and sale of the

property; (2) declaratory judgment that defendant lacks the legal standing to enforce the power of sale clause in a mortgage contract on the property; (3) violation of section nine of Massachusetts General Laws chapter 93A ("chapter 93A"); (4) slander of title; and (5) wrongful foreclosure.  (Docket Entry # 12-6).

On September 21, 2012, defendant filed the motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim for relief pursuant to Rule 12(b)(1) and (6), Fed. R. Civ. P.  (Docket Entry ## 7 & 8).  Defendant seeks dismissal because plaintiff lacks standing to challenge an assignment of the original mortgage on the property ("the mortgage" or "the Security Instrument") from Mortgage Electronic Registration Systems, Inc. ("MERS") to defendant.  Defendant further asserts that the assignment itself was valid.  (Docket Entry ## 8 & 18).  Plaintiff opposes the motion.  (Docket Entry # 9).

On November 20, 2012, this court held a hearing on the motion.  After affording plaintiff two weeks to respond to a reply brief filed by defendant (Docket Entry # 18), this court took the motion to dismiss (Docket Entry # 7) under advisement.

<u>STANDARD OF REVIEW</u>

"Rule 12(b)(1) is the proper vehicle for challenging a court's subject matter jurisdiction."  <u>Valentin v. Hospital</u>

Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001).  Because
federal courts are courts of limited jurisdiction, federal
jurisdiction is never presumed.  See Vigueira v. First Bank, 140
F.3d 12, 16 (1st Cir. 1998).  A motion to dismiss under Rule
12(b)(1), Fed. R. Civ. P. ("Rule 12(b)(1)"), as well as a motion
under Rule 12(b)(6), Fed. R. Civ. P. ("Rule 12(b)(6)"), are
liberally construed.  See Murphy v. United States, 45 F.3d 520,
522 (1st Cir. 1995).  A court should treat all well pleaded facts
as true and provide plaintiff the benefit of all reasonable
inferences.  Fothergill v. United States, 566 F.3d 248, 251 (1st
Cir. 2009).  Dismissal is only appropriate when the facts
alleged in the complaint, taken as true, do not support a
finding of federal subject matter jurisdiction.  Id.  Legal
conclusions set out in the amended complaint are not taken as
true and are not part of the factual record.[1]  See Bell Atlantic
Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("[O]n a motion to
dismiss, courts 'are not bound to accept as true a legal
conclusion couched as a factual allegation'").

In order to assess the merits of a Rule 12(b)(6) motion, a
court should consider the complaint and any documents attached
to it.  See Trans-Spec v. Caterpillar, 524 F.3d 315, 321 (1st
Cir. 2008).  In conducting this review, it is appropriate to
consider "'documents the authenticity of which are not disputed

---

[1]  The amended complaint includes a number of legal conclusions.

by the parties; . . . official public records; . . . documents central to plaintiff's claim; or . . . documents sufficiently referred to in the complaint.'" <u>Gargano v. Liberty Intern. Underwriters, Inc.</u>, 572 F.3d 45, 47 n.1 (1st Cir. 2009) (quoting <u>Watterson v. Page</u>, 987 F.2d 1, 3-4 (1st Cir. 1993)). A court, however, does not have to accept a complaint's "bald assertions" or "unsupportable conclusions." <u>Chongris v. Board of Appeals of Town of Andover</u>, 811 F.2d 36, 37 (1st Cir. 1987). Additionally, when "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." <u>Beddall v. State St. Bank and Trust Co.</u>, 137 F.3d 12, 16-17 (1st Cir. 1998).

Defendant seeks to include the following as part of the Rule 12(b)(6) record:  affidavits of Adel Issa (Docket Entry ## 18-1, pp. 2-5) (Docket Entry # 20) and Chuck Houston (Docket Entry # 18-2, pp. 2-4) ("affidavits"); a promissory note on the property ("the promissory note" or "the note") (Docket Entry # 18-1, pp. 7-9); the original mortgage on the property with New Century Mortgage Corporation ("New Century") (Docket Entry # 18-1, pp. 11-25); a mortgage loan purchase agreement ("MLPA") dated December 19, 2006 (Docket Entry # 18-1, pp. 27-72); a pooling and servicing agreement ("PSA") dated December 1, 2006; a

4

prospectus supplement ("Prospectus Supplement") for the
Carrington Mortgage Loan Trust, Series 2006-NC5 Asset-Backed
Pass-Through Certificates ("the Carrington trust");[2]
documentation showing plaintiff's loan included in a December
19, 2006 loan sale ("the Closing Schedule") (Docket Entry # 18-
1, pp. 74-81); and the second amended and restated asset
purchase agreement (Docket Entry # 18-2, pp. 6-85) signifying
the transfer of mortgage servicing rights from New Century to
Carrington Mortgage Services, LLC ("Carrington Mortgage
Services").

    This court takes judicial notice of the prospectus which is
located on the Securities and Exchange Commission's website.
http://www.sec.gov/Archives/edgar/data/1381946/00011442040605
3059/v060506_424b5.htm; see Policemen's Annuity and Benefit Fund
of City of Chicago v. Bank of America, NA, 2012 WL 6062544, at
*9 n.14 (S.D.N.Y. Dec. 7, 2012) ("[a]ll Prospectus Supplements,
other than that for 2006-AR16, were obtained on the SEC's
website, http://www.sec.gov, and the Court takes judicial notice
of them"); Maine State Ret. Sys. v. Countrywide Fin. Corp., 2011
WL 4389689, at *5 n.15 (C.D.Cal. May 5, 2011) ("court may take
judicial notice of SEC filings on a motion to dismiss" including
"prospectus supplements"); see also Pascal v. JPMorgan Chase

---

[2]  Plaintiff references the PSA and the Prospectus Supplement as
the "governing documents" in the amended verified complaint.
(Docket Entry # 12-6, ¶¶ 20-21).

Bank, Nat. Ass'n, 2013 WL 878588, at *4 n.4 (S.D.N.Y. March 11, 2013) (taking "judicial notice of the [Purchase and Assumption] Agreement, as it is publicly available through the FDIC's website"). The amended complaint notes that it attaches the entire PSA on a compact disc. (Docket Entry # 12-6, nn. 31-32). The PSA therefore constitutes part of the Rule 12(b)(6) record.

The aforementioned exceptions also allow this court to consider both the MLPA and the Closing Schedule attached to defendant's reply to plaintiff's opposition. See Beddall, 137 F.3d at 17 ("court's inquiry into the viability of allegations should not be hamstrung simply because the plaintiff fails to append to the complaint the very document upon which *by her own admission* the allegations rest") (emphasis in original). As the First Circuit made clear in Beddall, the civil rules contemplate consideration of critical documents omitted from a complaint to avoid interference with the "swift, uncomplicated way to weed out plainly unmeritorious cases." Beddall, 137 F.3d at 17.

The affidavits, however, constitute "matters outside the pleadings" within the meaning of Rule 12(d). Because this court declines to treat defendant's motion as one for summary judgment, the affidavits are not part of the Rule 12(b)(6) record. See Fed. R. Civ. P. 12(d).

## FACTUAL BACKGROUND

Plaintiff is the owner and resident of the property located at 15 Dawson Street in Boston, Massachusetts. (Docket Entry # 12-6, ¶¶ 1, 5). On October 31, 2006, he executed the promissory note with New Century as "Lender" in the amount of $224,000.00. (Docket Entry # 12-6, ¶ 4; Docket Entry # 12-7, pp. 2-3). The promissory note was secured by the mortgage with MERS, acting as "nominee" for New Century and its successors and assigns. (Docket Entry # 12-6, ¶¶ 5, 7). The mortgage was recorded in book 40672 at page 326 of the Suffolk County Registry of Deeds. (Docket Entry #12-7, p. 2). On April 2, 2007, New Century filed for bankruptcy protection under chapter 11 of the United States Bankruptcy Code. (Docket Entry # 12-6, ¶ 17) (Docket Entry # 12-12, p. 5). As stated in the amended complaint, New Century was divested of "all its owned mortgage assets" through a sale on June 29, 2007, to Ellington Capital Management Group, L.L.C ("Ellington"). (Docket Entry # 12-6, ¶¶ 19, 66).

The mortgage granted to MERS, as mortgagee, the power to act "solely as a nominee for Lender [New Century] and Lender's successors and assigns." (Docket Entry # 12-7, p. 2). In pertinent part, it states that, "Borrower [plaintiff] does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale . . ." the mortgaged property. (Docket Entry # 12-7, p. 4). The mortgage

identifies "MERS [as] the mortgagee under this Security
Instrument."  (Docket Entry # 12-7, p. 2).  Plaintiff
acknowledged "that MERS holds only legal title to the interests
granted by Borrower in this Security Instrument, but, if
necessary to comply with law or custom, MERS (as nominee for
Lender and Lender's successors and assigns) has the right:  to
exercise any or all of those interests . . .."[3]  (Docket Entry #
12-7, p. 4).

     MERS, serving as nominee for New Century and New Century's
successors and assigns, executed the assignment of the mortgage
to defendant on March 21, 2011.  (Docket Entry # 12-6, ¶ 16)
(Docket Entry # 12-10, p. 2).  The mortgage assignment was
executed by MERS under the signed authority of Tom Croft
("Croft"),[4] serving as "Assistant Secretary" for MERS, and

---

[3]  "[I]n Massachusetts, the granting of a mortgage vests title in
the mortgagee to the land placed as security for the underlying
debt.  The mortgage splits the title in two parts:  the legal
title, which becomes the mortgagee's, and the equitable title,
which the mortgagor retains."  Maglione v. BancBoston Mortg.
Corp., 557 N.E.2d 756, 757 (Mass.App.Ct. 1990).
[4]  Plaintiff contends that Croft was not an authorized signatory
for the assignor MERS with respect to the 2011 assignment of the
mortgage to defendant.  (Docket Entry # 12-6, ¶¶ 16-18).  The
supporting document attached to the amended complaint and
referenced as exhibit E is the "LinkedIn" profile for "Tom
Croft."  (Docket Entry # 12-6, ¶ 18) (Docket Entry # 12-11).
Plaintiff alleges that the document (Docket Entry # 12-11)
supports the proposition that Croft is not an authorized
signatory for MERS because he is a "Vice President of REO (Real
Estate Owned) for Carrington Mortgage Services" and, therefore,
"not a Vice President for MERS as nominee for New Century."
(Docket Entry # 12-6, ¶ 18).

recorded before a notary public in book 47767 at page 38 of the
Suffolk County Registry of Deeds.  (Docket Entry # 12-6, ¶ 16)
(Docket Entry # 12-10, p. 2).  The assignment has an effective
date of February 16, 2011.  (Docket Entry # 12-10, p. 2).
According to the amended complaint, MERS does not have the
authority to make a "direct assignment" of the mortgage and MERS
only tracks "off record third party sales" of beneficial
ownership interests, such as in the promissory note.[5]  (Docket
Entry # 12-6, ¶¶ 48, 58-61, 94-101) (Docket Entry # 12-8, p. 7).

Under the terms of the MLPA,[6] the promissory note was
endorsed in blank in anticipation of a loan sale transaction and

---

[5]  The 207 paragraph amended complaint sets out additional legal
arguments relative to the bankruptcy proceedings and ultimately
concludes that New Century was divested of its ownership
interest in all of the remaining mortgage loans at the time of
the bankruptcy, referenced as "Loans Not Financed Anywhere"
("LNFA"), through the aforementioned June 29, 2007 sale to
Ellington.  (Docket Entry # 12-6, ¶¶ 63-67, 82-86).  For
example, the amended complaint states that defendant could not
execute the power of sale under the Massachusetts foreclosure
statute (section 14 of Massachusetts General Laws chapter 244)
because it had no ownership interest in the property because the
mortgage assets flowed from New Century to Ellington.  (Docket
Entry # 12-6, ¶¶ 82, 123-24, 150).  To support this legal
conclusion, plaintiff states a number of times that MERS does
not make assignments and that New Century was only a servicing
business which divested itself of any other ownership interest
in the pool of mortgage loans at the time of the sale to
Ellington.  (Docket Entry # 12-6, ¶¶ 71-73, 77-79, 134-40).
[6]  Plaintiff argues that the December 2006 MLPA does not relate
to the mortgage because a signatory, NC Capital Corporation ("NC
Capital"), is a "distinct corporate entity from New Century
Mortgage Corporation."  (Docket Entry # 21, p. 4).  Plaintiff
further submits that NC Capital was not in possession of the

then sold as part of the MLPA on December 19, 2006.[7]   (Docket

Entry 18-1, p. 28).   The MLPA was executed by NC Capital,

Carrington Securities LP ("Carrington Securities") and Stanwich.

Carrington Securities, the seller, sold the mortgage loans to

Stanwich, the purchaser, with NC Capital acting as "responsible

party."   (Docket Entry # 18-1, p. 27).   The Prospectus

Supplement states that, "NC Capital Corporation, the responsible

party, is an affiliate of New Century Mortgage Corporation, an

originator and the servicer . . .."   Carrington Mortgage Loan

Trust, Series 2006-NC5, Prospectus Supplement, at S-36 (Dec. 14,

2006), http://www.sec.gov/Archives/edgar/data/1381946/0001144204

06053059/v060506_424b5.htm.   New Century and NC Capital are

"indirect wholly-owned subsidiar[ies] of New Century Financial

Corporation."   Carrington Mortgage Loan Trust, Series 2006-NC5,

Prospectus Supplement, at S-36 (Dec. 14, 2006),

---

loan to effectuate a sale to Stanwich Asset Acceptance Company,
LLC ("Stanwich").   (Docket Entry # 21, p. 4-5).
[7]   The promissory note, once endorsed in blank, became a bearer
instrument that was payable to the holder of the note.   Mass.
Gen. L. ch. 106, § 3-205(b).   Section 3-205(b) of Massachusetts
General Laws chapter 106 states that, "if an indorsement is made
by the holder of an instrument and it is not a special
indorsement, it is a 'blank indorsement.'   When indorsed in
blank, an instrument becomes payable to bearer and may be
negotiated by transfer of possession alone until specially
indorsed."   Id.; see In re Marron, 455 B.R. 1, 6
(Bkrptcy.D.Mass. 2011) ("a person in possession of a promissory
note endorsed in blank is deemed to be the holder of that note
with the right to enforce it") (citing Mass. Gen. L. ch. 106, §
2-305).

http://www.sec.gov/Archives/edgar/data/1381946/00011442040605309
/v060506_424b5.htm.

The MLPA states in section two, "the Seller will prepare .
. . prior to the Closing Date [December 19, 2006] a final
schedule (the 'Closing Schedule') that shall describe such
Mortgage Loans and set forth all of the Mortgage Loans to be
purchased under this Agreement."  (Docket Entry # 18-1, p. 27).
The Closing Schedule, in turn, identifies and describes
plaintiff's loan (Docket Entry # 18-1, pp. 74-81) with a loan
identification number corresponding to plaintiff's promissory
note (Docket Entry # 18-1, p. 7).  According to the MLPA,
Stanwich therefore purchased plaintiff's loan, along with a
number of other loans, and then deposited the pool of mortgage
loans into the Carrington trust.  (Docket Entry # 18-1, p. 27).
As stated in the Prospectus Supplement:  Stanwich is a wholly-
owned subsidiary of Carrington Securities; New Century Financial
Corporation is an affiliate of Carrington Capital Management,
LLC ("Carrington Capital Management"); and Carrington Capital
Management is an affiliate of Carrington Securities.  Carrington
Mortgage Loan Trust, Series 2006-NC5, Prospectus Supplement, at
S-36 (Dec. 14, 2006), http://www.sec.gov/Archives/edgar/data/138
1946/000114420406053059/v060506_424b5.htm.

Pursuant to the PSA, executed on December 1, 2006, the
mortgage loans, including plaintiff's promissory note, were

deposited into the Carrington trust prior to the closing date of December 19, 2006.  Carrington Mortgage Loan Trust, Series 2006-NC5, Prospectus Supplement, at S-10, S-157 (Dec. 14, 2006), http://www.sec.gov/Archives/edgar/data/1381946/000114420406053059/v060506_424b5.htm.  Under the PSA—which was executed by Stanwich, New Century, and defendant—New Century retained the servicing rights for the mortgages included in the trust and defendant served as trustee for the benefit of the mortgage certificate holders.  (Docket Entry # 18-1, p. 27-28); Carrington Mortgage Loan Trust, Series 2006-NC5, Pooling and Servicing Agreement, at 1 (Dec. 1, 2006), http://www.sec.gov/Archives/edgar/data/1381946/000114420407000216/v061372_ex10-1.htm.  When New Century filed for bankruptcy in 2007, the servicing rights retained by New Century under the MLPA were sold to Carrington Securities on May 21, 2007.  (Docket Entry # 12-12, pp. 31-32) (Docket Entry # 18-1, p. 27).  Plaintiff subsequently defaulted on the mortgage and defendant initiated foreclosure proceedings.  (Docket Entry # 12-6, ¶¶ 27, 31, 46).

<u>DISCUSSION</u>

In the amended complaint, plaintiff argues that defendant, in seeking foreclosure under section 14 of Massachusetts General Laws chapter 244, is not "legally possessed" of the right to foreclose on the property because plaintiff only granted that power to New Century as the original lender under the note.

(Docket Entry # 12-6, ¶ 31).  Further, plaintiff contends that
MERS does not make assignments and, therefore, defendant could
not possess the mortgage because the Carrington trust's
governing documents prevent such an assignment from occurring
after the trust's closing date on December 19, 2006.  (Docket
Entry # 12-6, ¶ 32).  Plaintiff points out that Massachusetts is
a title theory state under which "the mortgage may travel
independently from the note" and a transfer of title to land
requires a writing.[8]  (Docket Entry # 12-6, ¶ 36).  According to
plaintiff, defendant fails to show a viable chain of title
through a series of executed writings by the proper parties
transferring the mortgage eventually to defendant.  While
plaintiff acknowledges that an assignment of the mortgage from
MERS to defendant occurred on March 21, 2011, plaintiff
questions the ability of defendant to claim it received the
mortgage in accordance with the Carrington trust's governing
documents.  (Docket Entry # 12-6, ¶¶ 129-37).

        In seeking to dismiss the amended complaint, defendant
first asserts that plaintiff lacks standing to challenge the
validity of the assignment because plaintiff was not a party to
the mortgage contract or an intended third party beneficiary.
(Docket Entry # 8).  Contrary to plaintiff's position, defendant
contends that MERS has the authority to assign the mortgage.

---

[8]  See footnote three.

(Docket Entry # 8).  Further, once defendant became the holder

of the mortgage, defendant had the authority to foreclose on the

property conveyed under section 21 of Massachusetts General Laws

chapter 183 and section 14 of Massachusetts General Laws chapter

244.  (Docket Entry # 8).  This court initially turns to the

issue of standing.

A.  <u>Plaintiff's Standing</u>

     Defendant argues that plaintiff cannot challenge the

mortgage assignment because he is neither a party nor a third

party beneficiary to the March 21, 2011 assignment from MERS to

defendant.  (Docket Entry # 8).  Defendant cites <u>Oum v. Wells</u>

<u>Fargo, N.A.</u>, 842 F.Supp.2d 407 (D.Mass. 2012), <u>abrogated by</u>

<u>Culhane v. Aurora Loan Servs. of Neb.</u>, 708 F.3d 282 (1st Cir.

2013), for the principle that a mortgagor is not an intended

beneficiary of an assignment of a mortgage.[9]  <u>See</u> <u>Oum</u>, 842

F.Supp.2d at 413.  Plaintiff attempts to distinguish the <u>Oum</u>

decision by asserting that an assignment of a mortgage is a

transfer of an interest in plaintiff's property for which he

---

[9]  The court in <u>Oum</u> acknowledged that the assignment of a
mortgage is a contract and in order for a plaintiff to bring a
contract claim, the plaintiff must be either a party to the
contract or a third party beneficiary.  <u>Oum</u>, 842 F.Supp.2d at
413.  The <u>Oum</u> court therefore held that the plaintiff, meeting
neither category, lacked standing to challenge the validity of
the plaintiff's mortgage assignments.  <u>Id.</u> at 414-15.

holds the right of redemption.[10]   Thus, plaintiff argues that he

has standing to question whether the entity seeking to foreclose

on the property is the holder of the mortgage by valid

assignment and can enforce the statutory power of sale.   See In

re Lacey, 480 B.R. at 35-36.

    The First Circuit in Culhane v. Aurora Loan Servs. of Neb.,

708 F.3d 282, 289 (1st Cir. 2013), addressed the issue of

"[w]hether a mortgagor has standing to challenge the assignment

of her mortgage" when the mortgagor is not a party to the

assignment and is not a third party beneficiary.   The First

Circuit in Culhane acknowledged the peculiarities in mortgage

foreclosures and found that several prior decisions that denied

a plaintiff standing "paint[ed] with too broad a brush."   Id. at

290.   Specifically, two key aspects of mortgages circumvent the

general principle that nonparties may not challenge a contract:

first, a mortgagor in Massachusetts has a right to ensure that a

---

[10]   Plaintiff cites In re Lacey, 480 B.R. 13 (D.Mass. 2012), for
the proposition that the plaintiff has "standing to challenge
the validity of the foreclosure sale to the extent that there is
an issue as to whether the entity conducting the foreclosure
sale was the actual holder of the mortgage by way of assignment
at the time of the notice and sale."   In re Lacey, 480 B.R. at
35.   The Lacey court determined that the plaintiff had standing
insofar as a challenge is made based on defects in the chain of
assignments affecting a mortgage foreclosure, rather than
contesting the assignment contract itself.   See id. at 36
(citing Bailey v. Wells Fargo Bank, N.A., 468 B.R. 464 (D.Mass.
2012)).   Both the Oum and the Lacey decisions however predate
Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282 (1st Cir.
2013).

foreclosure is lawful because only the mortgagee has the statutory power of sale; and second, mortgages permit foreclosure without prior judicial authorization.  Id.; see U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 50 (Mass. 2011).

In order to protect Massachusetts mortgagors from facing foreclosures by entities lacking proper authority, mortgagors must be able to challenge the chain of assignments.  See Culhane, 708 F.3d at 290.  The Culhane court also noted that:

> Standing doctrine is meant to be a shield to protect the court from any role in the adjudication of disputes that do not measure up to a minimum set of adversarial requirements.  There is no principled basis for employing standing doctrine as a sword to deprive mortgagors of legal protection conferred upon them under state law.

Id. at 291.  The court in Culhane concluded that a mortgagor has standing to challenge the validity of an assignment based on an argument that the assignor did not in fact hold the mortgage and, thus, had no interest to assign.   See id.

In the case at bar, plaintiff argues that MERS acted solely as a nominee for New Century and its successors and assigns. Because MERS purportedly cannot make assignments and the assignment at issue was not executed until four years after the original lender dissolved, plaintiff submits that the assignment from MERS to defendant is void.  In other words, plaintiff contests whether defendant is the proper mortgagee to bring a foreclosure action.

Plaintiff therefore falls within the category of plaintiffs identified by the court in Culhane that may challenge the validity of a MERS mortgage assignment.  See id. at 290-91.  It is also worth noting that the Culhane decision limits such a challenge to a claim that the mortgage is "invalid, ineffective, or void" as opposed to a challenge that a shortcoming renders the mortgage "merely voidable at the election of one party but otherwise effective to pass legal title."  Id. at 291.

B.  MERS has Authority as Mortgagee to Assign the Mortgage

In seeking to dismiss the amended complaint, defendant next maintains that MERS had the authority to assign the mortgage in March 2011.  Plaintiff disagrees and additionally submits that MERS does not have the authority to assign a mortgage.

MERS, along with its parent corporation, MERSCORP, Inc., is a Delaware corporation based in Virginia created for the purpose of tracking the ownership interests in mortgage loans.  Culhane v. Aurora Loan Servs. Of Neb., 826 F.Supp.2d 352, 368 (D.Mass. 2011), aff'd, 708 F.3d 282 (1st Cir. 2013); In re Marron, 455 B.R. 1, 3 (D.Mass. 2011).  "MERS administers an electronic registry to track the transfer of ownership interests and servicing rights in mortgage loans, serving as mortgagee of record and holding legal title to mortgages in a nominee capacity."  Rosa v. Mortg. Elec. Sys., Inc., 821 F.Supp.2d 423, 429 (D.Mass. 2011) (quoting In re Huggins, 357 B.R. 180, 183

(D.Mass. 2006)) (internal quotation marks omitted).  While MERS ordinarily is not a holder of a promissory note, MERS is authorized to act as an agent for each note holder during successive transfers of a mortgage due to its nominee status. Culhane, 826 F.Supp.2d at 368-69; In re Lopez, 446 B.R. 12, 18-19 (D.Mass. 2011); In re Marron, 455 B.R. at 4.

MERS members, such as mortgage lenders, banks, and loan servicers, agree to pay annual fees in exchange for access to the MERS electronic registry.  Culhane, 826 F.Supp.2d at 368. MERS members further agree to name MERS as "the mortgagee of record in the mortgage so that beneficial ownership and servicing rights of the note may be transferred among MERS members without the need to publicly record such assignments; instead assignments of the note are tracked by MERS' electronic system."  Rosa, 821 F.Supp.2d at 429.  MERS remains the mortgagee of record—serving as nominee[11] for the lender and its successors and assigns—if the transfer of the beneficial interest of the note is between active MERS members.  See Kiah,

---

[11]  Plaintiff claims that MERS did not have the authority to assign the mortgage because MERS was acting solely as nominee for New Century.  "A 'nominee' is a 'person designated to act in place of another, usu[ally] in a very limited way' or a 'party who hold bare legal title for the benefit of others.'"  Kiah v. Aurora Loan Servs., LLC, 2011 WL 841282, at *8 (quoting Black's Law Dictionary 1076 (8th ed. 2004)).  The Kiah court explicitly stated that even though MERS did not retain any beneficial interest in the plaintiff's mortgage, MERS still had the authority to transfer the mortgage on behalf of the beneficial owner.  Id.

2011 WL 841282, at *1 n.1, *6, *8 (D.Mass. Mar. 4, 2011)

(holding assignment of mortgage by MERS valid).  If the note is

transferred to a nonmember, MERS' general practice is to execute

and record an assignment of the mortgage to the nonmember

entity.  In re Moreno, No. 08-17715-FJB, 2010 WL 2106208, at *1

(D.Mass. May 24, 2010).

        Plaintiff repeatedly contends in the amended complaint that

MERS by its terms does not make assignments of mortgages.

Massachusetts courts, however, "have generally held that MERS

may both foreclose and assign mortgages held in its name."  In

re Marron, 455 B.R. at 5 (rejecting argument that MERS, as

nominee of mortgage lender and its assigns, lacked right to

assign foreclosure power); see, e.g., Kiah, 2011 WL 841282, at

*8 ("even though MERS does not have a beneficial interest in the

property, it nonetheless could have transferred the mortgage on

its behalf of the beneficial owner"); Aliberti v. GMAC Mortg.,

LLC, 779 F.Supp.2d 242, 248-49 (D.Mass. 2011) (holding

assignment of mortgage by MERS properly gave foreclosing entity

power of sale), abrogated on other grounds by McKenna v. Wells

Fargo Bank, N.A., 693 F.3d 207 (1st Cir. 2012).  Moreover, the

terms of plaintiff's mortgage authorize MERS to act as an agent

for the note holder and therefore grant MERS the ability to

assign the mortgage at the request of the note holder, i.e. New

Century and New Century's successors and assigns.  (Docket Entry
# 12-7, p. 4).

     As previously stated, the Security Instrument (Docket Entry
# 12-7) specifies that, "Borrower does hereby *mortgage, grant
and convey to MERS* (solely as nominee for Lender and Lender's
successors and assigns) *. . . and to the successors and assigns
of MERS*, with power of sale, the [plaintiff's property]."
(Docket Entry # 12-7, p. 4) (emphasis added).  Here, as of
October 31, 2006, MERS was the mortgagee holding legal title of
the mortgage until the mortgage was assigned to defendant on
March 21, 2011.  Further, plaintiff gave MERS, serving as
nominee, the right to exercise any and all interests granted to
New Century and its successors and assigns.[12]  (Docket Entry #
12-7, p. 4).

     In order to invoke the statutory power of sale upon a
property under section 21 of Massachusetts General Laws chapter
183, the foreclosing entity, here defendant, must be in
possession of the mortgage prior to the notice of sale.  <u>Ibanez</u>,

---

[12]  The Security Instrument states:

     MERS (as nominee for Lender and Lender's successors and
     assigns) has the right:  to exercise any or all of those
     interests, including, but not limited to, the right to
     foreclose and sell the Property; and to take any action
     required of Lender including, but not limited to, releasing
     and cancelling this Security Instrument.

(Docket Entry # 12-7, p. 4).

941 N.E.2d at 54-55; see Mass. Gen. L. ch. 183, § 21.  The
Supreme Judicial Court of Massachusetts ("SJC") recently
interpreted the foreclosure statutes as requiring the entity
seeking to foreclose on a property to possess both the mortgage
and the note in order for a foreclosure sale to be valid.  Eaton
v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118, 1132-34 (Mass.
2012).  The SJC in Eaton limited this new interpretation "only
to apply to foreclosures under the power of sale where statutory
notice is provided after the date of this decision," June 22,
2012.  Id. at 1122; see McKenna v. Wells Fargo Bank, N.A., 693
F.3d 207, 215 (1st Cir. 2012).  Here, statutory notice of sale
was given prior to June 22, 2012.

MERS continued to hold legal title to plaintiff's mortgage
until the note was transferred to the note holder.  See Kiah,
2011 WL 841282, at *8 (noting nominee retains legal title for
benefit of others).  Where, as here, a note holder wishes to
foreclose upon a defaulted borrower, MERS rules require the
assignment of the mortgage from MERS to the "note owner's
servicer, or to other such party expressly and specifically
designated by the note owner."  Culhane, 826 F.Supp.2d at 327
n.13 (citing MERS Rule 8, § 1(a)).  Here, that designated entity
was defendant, acting as trustee for the Carrington trust.
(Docket Entry # 12-10, p. 2).

On March 21, 2011, MERS, the mortgagee under the mortgage still held legal title to the mortgage.[13]  Under the mortgage, plaintiff granted the "power of sale" to MERS (as nominee for New Century and New Century's successors and assigns) and MERS' assignees.  MERS was therefore legally entitled to assign the mortgage to defendant on March 21, 2011.  The valid assignment satisfies the requirement that a transfer of a legal interest in real property be evidenced by a signed writing.  Thus, MERS remained as mortgagee of record despite whether MERS held the mortgage as nominee for New Century or for defendant trustee.  Furthermore, defendant became record title holder on March 21, 2011, and subsequently issued the mandatory notice of sale to plaintiff.  Because the statutory notice was provided before June 2012, the Eaton decision does not require a determination that defendant was the holder of the note, but only whether defendant was the holder of the mortgage at the time of foreclosure.

Plaintiff correctly points out that Massachusetts follows a "title theory of mortgage" and that an assignment is a conveyance of an interest in land that requires a signed writing between the grantor and the grantee.  See Ibanez, 941 N.E.2d at 51 ("in a 'title theory state' like Massachusetts, a mortgage is

---

[13]  As discussed in the next section, New Century's bankruptcy did not affect MERS' status as mortgagee.

a transfer of legal title in a property to secure a debt"). As
the First Circuit further noted in Culhane, Massachusetts law
creates a separate distinction between the holder of legal title
in the mortgage and the holder of the beneficial interest in the
underlying note. Culhane, 708 F.3d at 292. The legal and
beneficial interests may be held by different parties. Id. For
example, when a homeowner executes a security interest with a
lender, he retains equitable title in the home, whereas legal
title is held by the mortgagee. See Ibanez, 941 N.E.2d at 54
("holder of the mortgage holds the mortgage in trust for the
purchaser of the note, who has an equitable right to obtain an
assignment of the mortgage"). The mortgagee retains legal title
of the property until an assignment of the mortgage is executed.
Id.

     In the context of MERS, "The mortgagee has a fiduciary duty
as trustee to act on behalf of the note owner, but retains title
to the mortgage and the right to assign the mortgage consistent
with that duty. This analysis does not change just because
MERS, as nominee, is the mortgagee." In re Marron, 455 B.R. at
6. The Culhane court found that MERS, as nominee for the holder
of the mortgage, had the authority to transfer the legal title
at the request of the defendant foreclosing entity. Culhane,
708 F.3d at 293. Reasoning that in order for the note holder to
foreclose, the power of assignment must be given to the

mortgagee, the court concluded that, "MERS's role as mortgagee of record and custodian of the bare legal interest as nominee for the member-noteholder, and the member-noteholder's role as owner of the beneficial interest in the loan, fit comfortably with each other and fit comfortably within the structure of Massachusetts mortgage law." Id.

Plaintiff incorrectly presumes that the March 21, 2011 assignment was a "tracking" of an "off-record sale" of plaintiff's promissory note from New Century to defendant. (Docket Entry # 12-6, ¶ 171).  Plaintiff acknowledges that the mortgage and the promissory note may travel separately in Massachusetts, yet fails to abide by this theory in arguing that the legal title to the mortgage only belonged to New Century (the holder of the note) and subsequently to Ellington, when the assets were transferred in the bankruptcy proceeding.  (Docket Entry # 12-6, ¶¶ 168-174).  Plaintiff also cites Ibanez as standing for the proposition that a mortgage assignment can only confirm an earlier legally valid assignment.  Plaintiff contends that if the mortgage were previously assigned, there must be evidence of that previous assignment with a signed writing in order for the 2011 assignment to be deemed valid.  (Docket Entry # 12-6, ¶¶ 37, 175).  Here, there was no previous assignment before the March 21, 2011 assignment and MERS remained as the holder of legal title until that date.  Defendant does not argue

that it was assigned the *mortgage* in 2006, but rather contends that defendant was only assigned the *note*.  Because the note and the mortgage may be separated under Massachusetts law, the defendant is therefore not required to provide any other signed writing other than the March 2011 mortgage assignment from MERS to defendant.

In contrast, the Ibanez decision involved a mortgage assignment after a notice of sale.  The SJC determined that if the plaintiffs did not have an assignment of the mortgage prior to the notice of sale, then the subsequent confirmatory mortgage after the notice of sale could not cure the defect in the attempted foreclosure process.  Ibanez, 941 N.E.2d at 54-55. Ibanez does not apply because MERS held legal title to the mortgage throughout the relevant time period up to the time of the March 21, 2011 assignment despite whichever entity held the promissory note.

Plaintiff bases his assertions on the supposition that New Century—not MERS—was the mortgagee of record.  However, plaintiff fails to consider that the mortgage he signed specifically granted legal title to MERS, as mortgagee for the property.  The mortgage states, "MERS holds only legal title to the interests granted by Borrower . . . [MERS] has the right to exercise any or all of those interests . . .."  Docket Entry # 12-7, p. 4).  From October 31, 2006 until March 21, 2011, MERS

remained the record title holder as mortgagee of plaintiff's
property.  By retaining legal title, MERS had proper authority
to make assignments independent of the note.  As previously
explained, before the June 22, 2012 Eaton decision, a mortgagee
did not need to possess the note in order to foreclose on a
property.

Because the notice of sale issued before the Eaton
decision, defendant only needed to possess the mortgage in order
to foreclose on plaintiff's property.  Thus, once MERS assigned
defendant legal title to the mortgage in March 2011, defendant
could exercise the statutory power of sale under section 21 of
Massachusetts General Laws chapter 183.

C.  New Century's Bankruptcy Did Not Affect Mortgage Assignment
from MERS to Defendant

Defendant next argues that despite the bankruptcy of New
Century in 2007, it had already acquired the beneficial interest
in the mortgage, i.e., the promissory note, on December 19,
2006, as part of the MLPA.  Defendant contends that under the
MLPA, New Century assigned defendant the note and defendant
thereby became an assignee of the note.  Accordingly, MERS was
no longer acting as nominee for New Century under the note but
rather as nominee for defendant.  Defendant also correctly
points out that MERS, as mortgagee, remained the holder of the

legal title to the mortgage at that time and at the time of the bankruptcy filing.

Plaintiff repeatedly contends that he executed the mortgage with New Century and New Century's successors and assigns. Plaintiff further states that the assignment by MERS of the mortgage in March 2011 to defendant was invalid because the assignment occurred after the bankruptcy of New Century and MERS cannot make an assignment as nominee for a non-existent entity and, in addition, MERS allegedly does not make assignments. Plaintiff makes the assumption that the mortgage was encompassed in the LNFA loans that were sold to Ellington; however, plaintiff does not provide any evidentiary support for the conclusion that the LNFA loans sold to Ellington, as part of New Century's bankruptcy proceedings, included plaintiff's promissory note.  (Docket Entry # 12-6, ¶¶ 19-23).

In addition, plaintiff asserts that defendant did not comply with the terms of its governing documents because only the depositor to the Carrington trust under the PSA (Stanwich) was authorized to make the sale of plaintiff's mortgage and note to the trust.[14]  (Docket Entry # 12-6, ¶¶ 128, 141, 145). Moreover, plaintiff contends that the trust had a closing date

---

[14]  As previously explained, the mortgage and legal title to the property was not transferred or assigned in 2006.  Rather, MERS held legal title to the mortgage throughout until the March 21, 2011 assignment.

of December 19, 2006, and a cut off date of December 1, 2006;
whereas, the assignment to defendant occurred on March 21, 2011,
well after the closing date and New Century's sale of mortgage
assets on June 29, 2007.  (Docket Entry # 12-6, ¶¶ 129-131, 137,
140).

Turning to the law, the issue devolves into what interest
New Century had in the note, as well as in the mortgage, at the
time of the bankruptcy filing.  According to plaintiff, MERS did
not have the authority to assign the mortgage to defendant in
March 2011 because MERS only acted as nominee for New Century
and New Century's successors and assigns.  Plaintiff argues that
because defendant was not a party to the original mortgage
contract and Ellington did not grant permission to MERS to make
the mortgage assignment, defendant cannot now enforce the power
of sale.  Under the Security Instrument, however, plaintiff
expressly granted MERS the legal title to the property.  The
terms of the mortgage unequivocally state that, "MERS is the
mortgagee under this Security Instrument."  (Docket Entry # 12-
7, p. 2).  MERS additionally acted as nominee for New Century
and New Century's "successors and assigns," as stated in the
mortgage.

A bankrupt entity's dissolution does not invalidate a
subsequent assignment of a mortgage from MERS, acting as
mortgagee and nominee for the original and subsequently bankrupt

lender and lender's successors and assigns, if the foreclosing entity can establish that it became a proper holder of the mortgage.  See Rosa, 821 F.Supp.2d at 431; Kiah, 2011 WL 841282, at *4; In re Marron, 455 B.R. at 7.  In Kiah, the plaintiff challenged the assignment of a mortgage from MERS to the loan servicer defendant which possessed the note.  Kiah, 2011 WL 841282, at *2.  The thrust of the plaintiff's argument centered on the premise that MERS did not have the power to assign the mortgage to the defendant because [the original lender] filed for bankruptcy prior to the assignment of the mortgage to defendant.  Id. at *3-4.  As such, the plaintiff argued that the assignment of the mortgage was void because MERS could not act on the behalf of a dissolved entity.  Id. at *4.

The Kiah court emphasized that the plaintiff challenged the assignment of the mortgage, but did not challenge the assignment of the note.  By not challenging the assignment of the note, the plaintiff in Kiah could not prevail on his claim that MERS could not act on behalf of a non-existent entity.  Id.  The court held that, "By law, the transfer of the note automatically transfers an equitable interest in the underlying mortgage, even without a formal assignment."  Id. (citing Ibanez, 941 N.E.2d at 53-54).  The court noted that regardless of who held the note, MERS remained as mortgagee under the agreement.  See id. ("First Magnus' dissolution would not prevent its successors and

assigns, including Aurora, from seeking transfer of the mortgage from MERS"). Concluding that "the dissolution of First Magnus would not and could not prevent [the defendant] from obtaining an assignment of the mortgage from MERS, both as a matter of law and according to the arrangement that existed between MERS and Aurora as a 'successor and assign' of First Magnus," the court approved the validity of the assignment by MERS. Id.; see also Rosa, 821 F.Supp.2d at 431 ("dissolution of the original lender did not prevent its successor from seeking assignment of the mortgage by MERS").

Plaintiff attempts to distinguish Kiah from the instant matter based on the contention that plaintiff is challenging the assignment of the note, an omission that proved to be a fatal to the plaintiff's claim in Kiah. (Docket Entry # 9, p. 6 n.7). While the succession of the note is disputed here, if defendant indeed was assigned the note in 2006, then plaintiff's claim will be unable to succeed. As the court reasoned in Kiah, and as previously explained, MERS may remain as mortgagee holding legal title as nominee for New Century's successors and assigns.[15]  If defendant owned the note and beneficial interest

---

[15]  Similar to plaintiff's argument here, the plaintiff in In re Marron argued that MERS lacked the authority to assign the mortgage without express authority from the owner of the note. In re Marron, 455 B.R. at 5.  Further, the plaintiff argued that because no chain of assignments existed, MERS remained the nominee for original lender, which declared bankruptcy prior to

in 2006, then any later assignment of legal title by MERS to
defendant is valid.   Furthermore, as this court discussed above,
the only requirement with regard to the Eaton decision is that
defendant hold the mortgage at the time of the notice of sale
prior to the date of the June 2012 decision.   Here, the notice
predates the Eaton decision.

In Ibanez, the SJC found that the foreclosing entity must
provide a complete chain of assignments in order to have proper
authority under the foreclosure statutes.   See Ibanez, 941
N.E.2d at 53 (citing In re Parrish, 326 B.R. 708 (N.D.Ohio
2005)).   The foreclosing entity can meet its burden by evidence
that traces the loan from the original lender to the entity.
Id.   The SJC explained the requirements needed at the time of
the notice of sale for a trust, assigned a pool of mortgages and
mortgage loans, to foreclose as follows:

> Where a pool of mortgages is assigned to a securitized
> trust, the executed agreement that assigns the pool of

---

the MERS assignment to the foreclosing entity.  Id.  Without a
request from the note owner, MERS could not have assigned the
mortgage and thus the foreclosure should have been invalid.  Id.
The court, however, disagreed with this argument.  Id. at 7.
Finding that Massachusetts allows foreclosure by a mortgagee
without an interest in the note, the bankruptcy court stated,
"The fact that the debtors' promissory note passed like a hot
potato down a line of owners, including some in bankruptcy and
liquidation, with no accompanying assignment of the note owner's
beneficial interest in the mortgage, changes nothing."  Id.  The
court reasoned that the mortgage interest held by MERS was
unaffected by the original lender's dissolution.  See id. ("MERS
remained the mortgagee in its capacity as trustee and as nominee
for whomever happened to own the note").

> mortgages, with a schedule of the pooled mortgage loans
> that clearly and specifically identifies the mortgage at
> issue as among those assigned, may suffice to establish the
> trustee as the mortgage holder.  However, there must be
> proof that the assignment was made by a party that itself
> held the mortgage.

Id.  The court acknowledged that the assignment of the mortgage

does not have to be recorded at the time of the notice of sale

as long as the party holds the mortgage.  Id.

Assuming arguendo, that defendant did not have clear title

to the note, the fundamental analysis does not change.  See

Rosa, 821 F.Supp.2d at 431 (Massachusetts does not require "a

chain of written assignments documenting the transfer of

beneficial interest in a mortgage to various note holders").

Examining only the mortgage, plaintiff executed the mortgage

with MERS as mortgagee.  In 2011, MERS—with proper authority—

assigned the mortgage to defendant prior to the notice of sale.

Because the assignment occurred before the July 2012 Eaton

decision, defendant did not need to hold the note in order to

foreclose on the property.

Plaintiff nonetheless challenges the validity of the March

2011 assignment on the basis that:

> Defendant fails to take into account that prior to June 22,
> 2012, that the "note and mortgage may travel
> independently."  The result of which is that even if the
> Defendant stood before this court holding the actual
> purported Plaintiff's promissory note, waving it around
> like a flag on the fourth of July the Defendant still could
> not foreclose unless it provided an intact and complete

> chain of title to the Plaintiff's mortgage from the
> originating entity to the claimant.

(Docket Entry # 9, p. 12) (citations omitted).  Here, MERS

served as mortgagee and as nominee for New Century thereby

giving MERS the power to assign the mortgage to defendant, a

practice comporting with the framework and structure of

Massachusetts mortgage law.  See Culhane, 708 F.3d at 292.

Until MERS assigned the mortgage to defendant in 2011, MERS

retained legal title as a successor and assignee of New Century

notwithstanding the 2007 bankruptcy filing.  See Kiah, 2011 WL

841282, at *4.

       With respect to the note, the fact that New Century filed

for bankruptcy in 2007 did not change the ownership interests of

the note.  As discussed, the MLPA evidences a transfer of

interest of the note from New Century to Stanwich, whereby the

note was then placed in a trust, later serviced by Carrington

Mortgage Services, with defendant acting as trustee.  (Docket

Entry # 18-1, p. 27) (Docket Entry # 18-2, p. 13).  The note was

transferred to defendant under the MLPA agreement dated December

19, 2006.  (Docket Entry # 18-1, p. 27).  Under Section 4(a) of

the agreement between Stanwich, NC Capital (as an affiliate of

New Century), and Carrington Securities, the note was first sold

to Stanwich and then deposited to a trust for which defendant

serves as trustee.  (Docket Entry # 18-1, pp. 27, 74-81).  The

33

Rule 12(b)(6) record establishes that the note was transferred to defendant as trustee prior to New Century's bankruptcy.

In sum, MERS held the mortgage to the property as mortgagee and thereby executed a valid assignment to defendant. Whether or not defendant can trace the note, the only requirement under Massachusetts law is for defendant to prove a valid assignment of the mortgage. Defendant became the holder of the mortgage by virtue of the assignment in 2011 and is therefore entitled to exercise the statutory power of sale. See Mass Gen. L. ch. 183, § 21; Culhane, 708 F.3d at 293. Because plaintiff defaulted on the mortgage and defendant properly instituted foreclosure proceedings, plaintiff's claims for injunctive relief and declaratory judgment that defendant did not have standing to enforce the power of sale do not withstand the motion to dismiss.

D.   Assignor Established Signatory Authority to Execute Assignment of the Mortgage

Plaintiff also contends in the amended complaint that Croft, as signatory to the assignment by MERS to defendant, is "not a Vice President for MERS as nominee for New Century" but actually a "Vice President of REO (Real Estate Owned) for Carrington Mortgage Services."[16] (Docket Entry # 12-6, ¶¶ 16-18) (Docket Entry # 12-11) (internal quotation marks omitted). In

---

[16]   See footnote four and related text.

exhibit E of the amended complaint, plaintiff submits a "LinkedIn" profile for "Tom Croft." (Docket Entry # 12-11). Plaintiff claims that because the document does not list Croft's position of "Assistant Secretary" for MERS, it automatically follows that Croft does not hold that position. (Docket Entry # 12-11). The LinkedIn profile (Docket Entry # 12-11) however does not conflict with the finding that Croft serves as "Assistant Secretary" for MERS. It simply reflects that he also held the title as "VP of REO at Carrington Mortgage Service [sic]." (Docket Entry # 12-11).

Even if there were a conflict, an assignor of a mortgage need only comply with the requirements of section 54B of Massachusetts General Laws chapter 183 ("section 54B") to validly execute an assignment of a mortgage. Culhane, 826 F.Supp.2d at 377-78; Kiah, 2011 WL 841282, at *7; In re Marron, 455 B.R. at 7-8. As a court in this district recently concluded, an assignment must be executed before a notary public and the signatory to the assignment must hold a qualifying position under the statutory requirements. Serra v. Quantum Servicing Corp., No. 11–11843–DPW, 2012 WL 3548037, at *7 (D.Mass. Aug. 15, 2012). Section 54B states:

> [A] release, partial release or assignment of mortgage . . . if executed before a notary public . . . by a person purporting to hold the position of president, vice president . . . secretary . . . or other similar office or position, *including assistant to any such office or*

> *position*, of the entity holding such mortgage, or otherwise
> purporting to be an authorized signatory for such entity,
> or acting under such power of attorney on behalf of such
> entity, acting in its own capacity or as a general partner
> or co-venturer of the entity holding such mortgage, *shall
> be binding upon such entity and shall be entitled to be
> recorded*, and no vote of the entity affirming such
> authority shall be required to permit recording.

Mass Gen. L. ch. 183, § 54B (emphasis added).  In addition, "In order to facilitate the assignment of mortgages, MERS typically designates signing authority to employees of its member firms, pursuant to corporate resolutions."  Rosa, 821 F.Supp.2d at 429 (citing Aliberti v. GMAC Mortgage, LLC, 779 F.Supp.2d 242, 248–49 (D.Mass. 2011)).

Consistent with the holding in Rosa, MERS designated Croft to serve as the signing authority even though he was also Vice President of Carrington Mortgage Services.  As long as Croft purported to be a qualified representative of MERS before a notary public, the assignment was valid under section 54B notwithstanding plaintiff's argument to the contrary based on Croft's LinkedIn profile.  Even if Croft did not have the authority to execute the assignment of MERS to defendant, the assignment would still be binding on MERS and entitled to be recorded.  See In re Marron, 2012 WL 4482374, at *5 (D.Mass. Sept. 26, 2012).  As stated in Marron, "[I]f the individual who executed the mortgage assignment on behalf of MERS lacked the authority to do so, the assignment was still binding on MERS

because § 54B requires only that the signatory 'purport' to be authorized."  Id.; see Kiah, 2011 WL 841282, at *6-7 (finding lack of authority of signatory to assign mortgage does not invalidate assignment); Culhane, 826 F.Supp.2d at 361 ("assignment is effective, however, without the need independently to establish the authority of the assignor to make the assignment").

It is undisputed by plaintiff that Croft purported to be an "Assistant Secretary" of MERS and that the assignment was executed before a notary public.  MERS fully complied with the requirements of section 54B and the assignment is therefore valid.  Further, because the assignment was proper and bestowed legal title to defendant, plaintiff's claim of wrongful foreclosure in Count V is also without merit.

E.   Plaintiff Failed to Comply with Demand Letter Requirements of Chapter 93A

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . .."  Mass. Gen. L. ch. 93A, § 2.  The chapter provides an individual with a private right of action. Mass. Gen. L. ch. 93A, § 9; see also Kozaryn v. Ocwen Loan Servicing, LLC, 784 F.Supp.2d 100, 102 (D.Mass. 2011).  The section nine remedy is available only to a "'consumer,' which is defined as 'a person who purchases or leases goods or services

or property, real or personal, primarily for personal, family or household purposes.'"  Provanzano v. Parker, 796 F.Supp.2d 247, 256 (D.Mass. 2011) (quoting Slaney v. Westwood Auto, Inc., 322 N.E.2d 768, 777 (Mass. 1975)).

Under the requirements of section nine, a plaintiff must first mail to defendant a "written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered . . .."  Mass. Gen. L. ch. 93A, § 9(3).  The demand must be submitted to the defendant thirty days prior to filing suit. Mass. Gen. L. ch. 93A, § 9(3).  Further, "The statutory notice requirement is not merely a procedural nicety, but, rather 'a prerequisite to suit.'"  Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 19 (1st Cir. 2004) (quoting Entrialgo v. Twin City Dodge, Inc., 333 N.E.2d 202, 204 (Mass. 1975)).  A plaintiff's failure to allege the sending of the demand letter in the complaint is grounds to dismiss the claim.  Butler v. Deutsche Bank Trust Co. Americas, 2012 WL 3518560, at *11 (D.Mass. Aug. 14, 2012) (citing City of Boston v. Aetna Life Ins. Co., 506 N.E.2d 106 (Mass. 1987)).

Plaintiff contends that the demand letter requirement under section nine does not apply to defendant because plaintiff was "forced to file an underlying action defensively."  (Docket Entry # 12-6, ¶ 185).  Further, plaintiff contends that the

requirement does not apply to defendant because defendant does
not maintain a place of business or keep assets within
Massachusetts.  (Docket Entry # 12-6, ¶ 186).  Chapter 93A
provides two exceptions to the demand letter requirement:  "if
the claim is asserted by way of counterclaim or cross-claim, or
if the prospective respondent does not maintain a place of
business or does not keep assets within the commonwealth . . .."
Mass. Gen. L. ch. 93A, § 9(3); see Butler, 2012 WL 3518560, at
*11-12.

The only inference that can be drawn from plaintiff's
reliance on the first exception is that by responding to the
foreclosure proceeding of defendant, plaintiff filed this action
as a defensive "counterclaim."  As the court found in Butler,
however, a foreclosure sale is a "non-judicial" action and the
mere fact that the plaintiff responded with a lawsuit does not
characterize the action as a counterclaim.  Butler, 2012 WL
3518560, at *12; see McKenna, 693 F.3d at 218 (finding
plaintiff's claim for relief does not include a cross-claim or
counterclaim).  The exception to the demand letter requirement
for a "counterclaim or cross-claim" therefore does not apply.

Plaintiff also argues that a mortgage is not an "asset"
under the second exception of the chapter 93A demand letter
requirement.  Defendant contends that the exception does not
apply because defendant held both the note and the mortgage.  As

noted by the First Circuit in McKenna, "[defendant] Wells Fargo clearly [kept] assets within Massachusetts, one of those assets being a real property interest in the home where [plaintiff] resided." McKenna, 693 F.3d at 218.  Plaintiff cites to the decision in Butler for the proposition that a mortgage alone is not an "asset."

> Butler found that:
>
> A mortgage and note *in combination* are a property interest (albeit one subject to some limitation) having value.  As a result of Eaton*,* it is unlikely that foreclosure litigation will in the future proceed in the absence of the combination of the mortgage and note.  Thus, in the future such combinations should provide the in-state asset necessary for c. 93A claims.

Butler, 2012 WL 3518560, at *13 n.12 (emphasis in original).

Here, as previously determined, defendant did in fact hold the note and the mortgage at the time of the notice of sale.  It is important to clarify, however, that the Butler decision, which requires both the note and mortgage to find an "asset" under chapter 93A, is dependent on the SJC's decision in Eaton.  See id. at *12 n.11 ("my view of how the Supreme Judicial Court would likely resolve [the issue of whether a mortgage is an asset] has changed in light of the Supreme Judicial Court's recent decision in [Eaton]").  Whether or not a mortgage is defined as an "asset" for purposes of chapter 93A depends on

whether the notice of sale occurred after Eaton's prospective ruling.[17]   See id. at *12.

Here, defendant is deemed to hold "assets" within Massachusetts for the purposes of the second claimed exception to chapter 93A because the mortgage was assigned and the notice of sale was given prior to the June 2012 decision in Eaton. Therefore, plaintiff was required to serve defendant with a demand letter prior to instituting an action under section nine. The chapter 93A claim therefore fails to withstand the motion to dismiss.

F.   Plaintiff Fails to State a Cause of Action for Slander of Title

Plaintiff asserts a claim of slander of title against defendant in Count IV of the amended complaint.   A claim of slander of title is "a tort action for damage to real property resulting from interference with title to real estate by

---

[17]   The court in Butler further distinguished its finding—that a mortgage and note together create a qualified property interest envisioned under Chapter 93A—with the court's previous decision in Okoye v. Bank of New York Mellon, 2011 WL 3269686 (D.Mass. July 28, 2011).   Okoye determined that, "A recorded mortgage secured by real property located in the Commonwealth is an 'asset[ ] within the commonwealth' for purposes of Chapter 93A." Okoye, 2011 WL 3269686, at *4 (quoting In re Anderson, 2006 WL 2786974, at *1 (D.Mass. Sept. 26, 2006)).   Prior to the Eaton decision, the SJC would likely determine that a mortgage is an "asset" under chapter 93A, whereas, if the assignment had occurred after the date of the Eaton decision, the Butler court reasoned that the SJC would decide the issue differently.   See Butler, 2012 WL 3518560, at *12, 12 n.11.

falsehoods which, although not personally defamatory, cause the plaintiff pecuniary loss through interference with . . . dominion over his property." CMI Associates, LLC v. Regional Financing Co., LLC, 775 F.Supp.2d 281, 289 (D.Mass. 2011) (quoting Salloom v. Lister, 2004 WL 1836027 (Mass.Super. Aug. 10, 2004)) (internal quotation marks omitted).  A plaintiff asserting a claim of slander of title must be able to prove that the statements were false and additionally that the statements were published with reckless disregard for the truth.  Rosa, 821 F.Supp.2d at 434.  In Massachusetts, a defendant is liable for slander of title if the defendant "publishes a false statement; (b) that harms the interests of another; (c) with the intent to harm the interests of another or either recognizes or should recognize that it is likely to do so; and (d) knows that the statement is false "or acts in reckless disregard of its truth or falsity." CMI Associates, 775 F.Supp.2d at 289 (quoting Dulgarian v. Stone, 652 N.E.2d 603 (Mass. 1995)) (internal quotation marks omitted).

Taking into consideration the previous determination that MERS, as mortgagee, transferred legal title to defendant during the 2011 assignment, plaintiff cannot prove that the recording of the assignment constituted slander of title.  Plaintiff expressly granted to MERS all powers embedded with the designation of mortgagee on the property.  The assignment was

therefore valid and plaintiff's claim fails because defendant did not "publish a false statement." <u>Rosa</u>, 821 F.Supp.2d at 434.  As held by the court in <u>Rosa</u>, because the assignment by MERS was valid, the act of recording, as well as all other publications by defendant, did not constitute false statements. The claim of slander of title is therefore without merit.

<u>CONCLUSION</u>

In accordance with the foregoing discussion, this court **RECOMMENDS**[18] that the motion to dismiss (Docket Entry # 7) be **ALLOWED.**

/s/ Marianne B. Bowler
<br>**MARIANNE B. BOWLER**
<br>United States Magistrate Judge

---

[18]  Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  <u>See</u> Rule 72(b), Fed. R. Civ. P.  Any party may respond to another party's objections within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.